1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  RICHARD C. CHENG (CSBN 135992)
   Assistant United States Attorney
5
     150 Almaden Boulevard, 9th Floor
6       San Jose, California 95113
        Telephone: (408) 535-5032
7       Fax: (408) 535-5066
        e-mail: richard.cheng@usdoj.gov
8
   Attorneys for Plaintiff
9
                              UNITED STATES DISTRICT COURT
10
                             NORTHERN DISTRICT OF CALIFORNIA
11
                                       SAN JOSE DIVISION
12

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. CR-08 00197- RMW |
| | ) | |
| Plaintiff, | ) | DATE: July 7, 2008 |
| | ) | TIME: 9:00 a.m. |
| v. | ) | |
| | ) | NOTICE OF MOTION AND MOTION |
| SHAILESHKUMAR JAIN, | ) | IN SUPPORT OF ORDER AUTHORIZING |
| | ) | DEPOSITIONS PURSUANT TO |
| a/k/a SAM JAIN, | ) | F. R. CRIM. P. 15 AND DECLARATIONS |
| | ) | IN SUPPORT THEREOF |
| Defendant. | ) | |
| | ) | |

19                                         NOTICE OF MOTION

20         PLEASE TAKE NOTICE that on July 7, 2008, or as soon thereafter as counsel may be heard,

21  plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Richard C. Cheng, Assistant

22  United States Attorney, will move this court for an order authorizing the taking of foreign witness

23  depositions pursuant to F. R. Crim. P. 15 and declarations in support thereof.

24  //
25  //
26  //
27  //
28  //

## MOTION

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Richard C. Cheng, Assistant United States Attorney, hereby moves the court for an order pursuant to Rule 15, Federal Rules of Criminal Procedure, authorizing the taking of foreign witness depositions and declarations. This motion is based on the statement of facts, memorandum of points and authorities, together with the attached declaration of Richard C. Cheng.

DATE: June 27, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


_____/s/_____
RICHARD C. CHENG
Assistant U.S. Attorney

1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  RICHARD C. CHENG (CSBN 135992)
   Assistant United States Attorney
5
       150 Almaden Boulevard, 9th Floor
6      San Jose, California 95113
       Telephone: (408) 535-5032
7      Fax: (408) 535-5066
       e-mail: richard.cheng@usdoj.gov
8
   Attorneys for Plaintiff
9
                        UNITED STATES DISTRICT COURT
10
                        NORTHERN DISTRICT OF CALIFORNIA
11
                                SAN JOSE DIVISION
12

13 UNITED STATES OF AMERICA,          )   Criminal Case No. CR-08 00197- RMW
                                      )
14              Plaintiff,            )   DATE:  July 7, 2008
                                      )   TIME:  9:00 a.m.
15       v.                           )
                                      )   MEMORANDUM OF POINTS AND
16 SHAILESHKUMAR JAIN,                )   AUTHORITIES IN SUPPORT OF THE
                                      )   GOVERNMENT'S MOTION FOR ORDER
17       a/k/a SAM JAIN,              )   AUTHORIZING THE TAKING OF
                                      )   FOREIGN WITNESS DEPOSITIONS
18              Defendant.            )   PURSUANT TO F.R. CRIM. P. 15
                                      )
19

20       COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

21 Richard C. Cheng, Assistant United States Attorney, hereby files its motion in support of order

22 authorizing the taking of foreign witness depositions pursuant to F. R. Crim. P. 15 and declarations in

23 support thereof.  Said motion is based upon the files and records of this case, together with the attached

24 //

25 //

26 //

27 //

28 //

1  statement of facts and memorandum of points and authorities.
2     DATE:    June 27, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____/s/_____
RICHARD C. CHENG
Assistant U.S. Attorney

# I

# STATEMENT OF FACTS

### A. The Indictment

The Indictment in this case has charged defendant Shaileshkumar Jain with one (1) count of criminal copyright infringement in violation of 18 U.S.C. § 2319(b)(1), twelve (12) counts of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a), nine (9) counts of wire fraud in violation of 18 U.S.C. § 1343, and nine (9) counts of mail fraud in violation of 18 U.S.C. § 1341. The Indictment alleges that Jain violated the laws of the United States laws by selling counterfeit computer software over the Internet, causing the fraudulent movement of funds over wire communications, and distributing the counterfeit software through the mail.

### B. The Sale of Counterfeit Symantec Products

In 2003, the Symantec Corporation of Cupertino, California, was contacted by eight individuals who had purchased what they were lead to believe were authentic Symantec Corporation computer software products. Each customer had purchased the software over the Internet from various websites. Each customer had been lured to the websites either through "spamming," which is the process of sending unsolicited emails to unsuspecting prospective customers, or "redirecting," which is the process of automatically directing potential Symantec Corporation customers to fraudulent websites. Each customer paid for the counterfeit Symantec Corporation software by sending their credit or debit card information over the Internet to the websites. In turn, each customer received a compact disc (CD) that bore the markings of the Symantec Corporation, thereby giving the CDs an appearance of legitimacy. Each CD was mailed via the United States Postal Service or other private mail carrier, and listed the sender as "Software Purchase Department." The return address provided was PO Box 820, Amelia, OH 45102-0820, U.S.A. The Symantec Corporation analyzed each of the CDs submitted by the eight customers and determined that the CDs were in fact counterfeit.

In November 2003, the Symantec Corporation purchased software from one of the fraudulent websites. The Symantec Corporation, which conducted this transaction under an assumed name, purchased computer software called Norton AntiVirus 2003, a software product protected by copyright by the Symantec Corporation. The Symantec Corporation received an envelope via the U.S. Postal

1  Service listing the sender as "Software Purchase Department," and providing the same return address
2  as above. The envelope contained a CD that, when analyzed by the Symantec Corporation, was also
3  determined to be counterfeit.

4  The listed return address was found to belong to a James Reno, of Bytehosting Internet
5  Services, LLC, located in Amelia, Ohio. On July 29, 2004, Reno was deposed by Symantec
6  Corporation's legal counsel. In his deposition Reno stated that his company, Bytehosting Internet
7  Services, LLC, hosted a website for Promotion Management Consultants, Inc. (PMMCI), and that it
8  conducted the shipping and receiving of CDs for PMMCI. Reno claimed that he did not know who
9  owned PMMCI, but that an individual named Sam Jain appeared to run its operations and was Reno's
10 primary contact. Reno conducted shipping operations of the counterfeit Symantec software for Jain from
11 2001 until the end of 2003.

12 As a result of its investigation, Symantec Corporation determined that Jain had sold
13 approximately 26,800 counterfeited Symantec Corporation CDs to unsuspecting customers over the
14 Internet. In April 2005, the Symantec Corporation won a default civil judgment against Jain and others
15 in the amount of $3.1 million USD.

16     **C.**     **Tracing Proceeds of the Sale of Counterfeit Software To Shell Accounts**

17 Tracing the proceeds derived by Jain from the sale of the counterfeit Symantec software, the
18 investigation has revealed a number of persons who are in possession of specific evidence that is directly
19 probative to the issues involved in the prosecution of Jain, including the defendant's knowledge and
20 criminal intent. Specifically, these individuals who are citizens of, and reside in Uruguay, were enlisted
21 by Jain to establish a number of shell companies and financial accounts to receive in, and distribute out
22 the illegal proceeds.

23     1.     Claudio Ferreira Dos Santos

24 The investigation has revealed that Jain has used the personal information of a Brazilian
25 national named Claudio Ferreira Dos Santos, to establish a personal holding company, a corporation,
26 and investment accounts in Uruguay and Switzerland to act as the repository of the monies paid for the
27 counterfeit software. Dos Santos, a citizen and resident of Uruguay, claims to have no knowledge of
28 Financiera Volturno, Rivonal Corporation S.A., or any Merrill Lynch investment accounts in Uruguay

or Switzerland. Dos Santos was reportedly an employee of Jain's in Brazil when the defendant asked him to be the registered representative of Reydson Serviços Telecomunicações Ltda., a company in Brazil. According to Dos Santos, Jain made this request of him because foreigners, such as Jain, are purportedly barred from owning businesses in Brazil. Dos Santos stated that he was not made aware that he would also be the registered representative of the Uruguayan companies, Financiera Volturno or Rivonal Corporation S.A. Dos Santos was informed about a Merrill Lynch Uruguay account only upon being contacted by Merrill Lynch Uruguay in March 2006, and being told that his name was on the signature card for the account.

2.  Federico Ponce De Leon

Jain and attorney Federico Ponce De Leon, who is a citizen and resident of Uruguay, first established the holding company in Uruguay, named Financiera Volturno. Using Financiera Volturno, Jain and his attorney then established the above-noted corporation, named the Rivonal Corporation S.A., which was ostensibly owned by Financiera Volturno. Dos Santos is listed as having power of attorney over Financiera Volturno and is listed as the sole member of the Rivonal Corporation's Board of Directors.

3.  Walter Ponce De Leon

The father of attorney Federico Ponce De Leon, Walter Ponce De Leon, who is also a citizen and resident of Uruguay, was the listed president of Rivonal Corporation S.A. The Rivonal Corporation S.A. in turn, opened an investment account in Uruguay at Institución Financiera Externa Merrill Lynch(herein referred to as Merrill Lynch Uruguay) for the benefit of the defendant.

4.  Former Merrill Lynch Uruguay Employees: Muscio, Birnbaum and Jorcin

The investigation shows that this Merrill Lynch account was opened by a business associate of Jain's, named Alvaro Muscio, a citizen and resident of Uruguay, who was financial advisor for Merrill Lynch Uruguay. The investigation shows that Muscio, along with Merrill Lynch Financial Advisor Juan Birnbaum, and Merrill Lynch Client Associate Marcelo Jorcin, both of whom are citizens and residents of Uruguay, knowingly opened these shell accounts for Jain ,using Dos Santos' name, signature, and passport. Merrill Lynch Uruguay has since terminated Muscio's, Birnbaum's, and Jorcin's employment with the company.

1          5.    <u>Deposition of Jain Regarding His Association with Swiss Account Conducted by Swiss Federal Prosecutors Christian Coquoz, Boillat Laurence and Officer Michel Charpiot</u>

2

3        After the illicit funds received from the sale of the counterfeit Symantec computer software

4 were laundered through financial institutions in the United States to the Merrill Lynch Uruguay

5 account of Financiera Volturno and Rivonal Corporation S.A, the illegally derived proceeds were

6 then transferred to another Merrill Lynch shell account in Switzerland, which contains an

7 approximate balance of $13.5 million USD. That sum has been frozen by the Swiss authorities and

8 is believed to be in the name of nominee owners put into place by Jain. Moreover, the investigation

9 shows that Jain has been interviewed and deposed by Christian Coquoz and Boillat Laurence, both

10 Swiss Federal prosecutors, and Michel Charpiot, a Swiss law enforcement officer, regarding his

11 association to the funds in the Swiss account.

12         6.    <u>Jain's Sources of Supply of Counterfeit Symantec Software: Mark Ma</u>

13        The United States has identified a number of persons and businesses that may have served

14 as Jain's source of supply for the counterfeit Symantec software. One such individual, highlighted

15 by Jain's own attorneys as being one of their client's source is an individual known as Mark Ma.

16 According to the information provided in part by the Chinese government, Ma's true name is Ke Pei

17 Ma, born on January 19, 1958 and is an individual who was previously assigned a United States

18 Alien Registration number. Ma departed from the United States in October 2002 and is currently

19 located in a Chinese prison facility in Shanghai, China.

20         **II**

21         **<u>NEED FOR FOREIGN DEPOSITION</u>**

22        This case involves the trafficking, and profiting from the sale of counterfeit merchandise

23 that has defrauded thousands of consumers. The individuals named above are in possession of

24 information, and are able to provide testimony that bears directly on the knowledge and intent of the

25 defendant for his alleged acts of criminal copyright infringement, trafficking in counterfeit goods and

26 mail and wire fraud

27        In particular, the United States has collected evidence that shows that Sam Jain fraudulently

28 sold counterfeit computer software over the Internet, distributed the counterfeit product through the

1  mail, and established shell corporations and investment accounts in Uruguay and Switzerland to
2  launder the proceeds of their illegal activities.  The individuals identified above possess information
3  regarding whether the shell companies, Financiera Volturno and Rivonal Corporation S.A. were
4  fraudulently established; whether those corporations were established for the purpose of opening
5  corporate investment accounts at Merrill Lynch Uruguay and Switzerland; whether the Merrill Lynch
6  Uruguay investment account received the proceeds of Jain's alleged illegal activities; whether the
7  funds from the Merrill Lynch Uruguay account were transferred to an account in Switzerland and
8  other accounts yet to be identified; and whether there exists others in Uruguay, who conspired to
9  launder the proceeds of Jain's alleged illegal activities.
10         Because neither the individuals currently located in Uruguay, China or Switzerland are
11  subject to the subpoena power of this Court, it is unlikely that their attendance and testimony at trial
12  in this matter may be compelled or relied upon.  Further, there is no treaty in effect between the
13  United States and Uruguay, the People's Republic of China or Switzerland, to compel the attendance
14  of witnesses at a foreign trial.  See Exhibit A, Cheng Declaration.  Thus, if the witnesses refuse to
15  come to the United States to testify at trial, or at some point change their mind or otherwise become
16  unavailable, the United States will lose the opportunity to present their crucial testimony.
17         The testimony of the witnesses in Uruguay are important to the Government's case because
18  the defendant's instructions to move the monies derived from the sale of the counterfeit software
19  through a series of financial accounts, and ultimately to accounts which bear the names of shell
20  companies and nominee owners, shows the intent and knowledge of the defendant.  The testimony of
21  the defendant's source of supply of the counterfeit software will establish the defendant's knowledge
22  and intent of his actions in selling the counterfeit software.  And finally, the testimony of the Swiss
23  officials who have previously questioned and deposed the defendant regarding his knowledge and
24  association with the funds currently contained in the Merrill Lynch account in Switzerland, will
25  firmly establish that the funds were directly derived by Jain from his sale of counterfeit Symantec
26  software.
27  //
28  //

# III

# **POINTS AND AUTHORITIES**

A.   THE COURT SHOULD AUTHORIZE THE TAKING OF
     FOREIGN WITNESS DEPOSITIONS PURSUANT TO
     F. R. CRIM. P. 15

Federal Rule of Criminal Procedure 15 provides in part:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party, and notice to the parties order that testimony of such witness be taken by deposition . . .

Rule 15 permits a district court to authorize the taking of depositions when it is convinced that "exceptional circumstances" exist. Three factors guide the exceptional circumstances analysis: (1) whether the desired testimony will be unavailable at trial; (2) whether the desired testimony is material to the moving party's case; and (3) whether the taking of the deposition would cause injustice to the nonmoving party. United States v. Ramos, 45 F.3d 1519, 1522 (11th Cir. 1995); United States v. Marteu, 162 F.R.D. 364, 367 (M.D. Fla. 1995).

   1.   Unavailability

Rule 15 requires that the party seeking authorization to take depositions (in this case, the Government) to establish the probable unavailability of the proposed deponent or deponents for trial. Ramos, 45 F.3d at 1522-23. No conclusive showing of unavailability is required. United States v. Sines, 761 F.2d 1434, 1439 (9th Cir. 1985) ("It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition"). Rather, unavailability is determined according to the practical standard of whether the witness cannot be produced, despite the Government's good faith efforts. United States v. Johnpoll, 730 F.2d 702, 709 (2nd Cir. 1984); United States v. Johnson, 735 F.2d 1200, 1203 (9th Cir. 1984). The showing may be based on affidavits, representations made by counsel, and other reliable information. Sines, 761 F.2d at 1439; see also Drogoul, 1 F.3d at 1553 and n.14 (proffered letter stating that witnesses had declared their unwillingness to testify in the United States was sufficient to establish unavailability under Rule 15); United States v. Kelly, 892 F.2d 255, 262 (3rd Cir. 1989) (unavailability established in part by lack

1  of statute or treaty making prospective witnesses amenable to service to United States process);
2  Johnpoll, 739 F.2d at 709 (same).
3      The relative impracticability of finding the above stated witnesses, some of whose
4  addresses and present location are unknown, establishes the probable unavailability of the deponents
5  for trial. Coupled with the defendant's refusal to waive his right to a speedy trial, determining the
6  whereabouts of the deponents, persuading them to appear before the court, and arranging for their
7  transportation are highly impractical when a deposition that would be easier to organize, can be
8  equally effective. Moreover, even assuming that the exact locations of the deponents in Uruguay,
9  China and Switzerland, can be determined, the Government lacks the power to officially serve them
10 and compel their presence before this court.  Subpoenas issued by a United States court have no legal
11 force to compel a non-U.S. citizen residing in the Republic of Uruguay, the People's Republic of
12 China or Switzerland, to appear to give testimony in the United States. Outside of a deposition in
13 Uruguay, Switzerland and China, which would enlist the aid of Uruguayan, Chinese and Swiss
14 authorities, the presence of the deponents before this court at trial cannot be reliably ensured. Finally,
15 the U.S. Attorney's Office has not been able to reach some of proposed deponents individually to
16 even discuss the possibility of their presence at trial.

17          2.      Materiality

18      "Materiality" under Rule 15 is a term of art that means the substance of the evidence being
19 sought is material to the party moving to depose. Ramos, 45 F.3d at 1523.  When a prospective
20 witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness
21 requires permitting the moving party to preserve that testimony by deposing the witness. Drogoul, 1
22 F.3d at 1552.  The testimony of the proposed deponents in this case is critical to the prosecution
23 because it tends, in substance, to prove the elements of the charged crimes.  For example, to establish
24 that the defendant knowingly committed wire fraud, the Government must prove that the defendant
25 devised a scheme to defraud and obtain money by making fraudulent pretenses through wire, radio,
26 or television communications in interstate of foreign commerce.  The testimony of the proposed
27 deponents will show the defendant's intent, knowledge and operation of the fraud.
28

1 | Any evidence that may conclusively establish the defendant's criminal activities is
2 | obviously relevant and undoubtedly material to the Government's case. Furthermore, determining
3 | whether the proposed deponents were aware of the transfer of funds from accounts listed in their
4 | names to other accounts across the world is essential to establishing the Government's case as well.
5 | Likewise, evidence establishing the creation of accounts behind nominee holders is critical for the
6 | Government's case. The deponents could proffer this information, which would inevitably become
7 | crucial elements to the Government's case.

8 | Based upon the investigation to date, the Government proffers the following proof of
9 | materiality. Three of the proposed deponents (Muscio, Birnbaum, and Jorcin) are Merrill Lynch
10 | Uruguay employees who should be able to testify as to the financial transactions of the Uruguayan
11 | account, which the Government believes the defendant used to launder his ill-gotten funds from his
12 | software counterfeiting scheme. Moreover, the Government has found that large amounts of the
13 | funds in the domestic Merrill Lynch account, have been transferred to at least one account in
14 | Switzerland and possibly to other accounts that have yet to be determined. The testimony of the
15 | employees would be highly relevant and material in following the flow of funds from the defendant.
16 | Another proposed deponent, Walter Ponce De Leon, was the president of the corporation that created
17 | the aforementioned Merrill Lynch Uruguay account, while his son, Federico Ponce De Leon, another
18 | proposed deponent, was an active business partner of the defendant. Lastly, Claudio Dos Santos, the
19 | nominee owner of a holding company, two businesses and several financial accounts, all of which
20 | held and transferred proceeds from the defendant's sale of counterfeit software, has no real
21 | association with any of the shell companies or accounts. By his own admission, Dos Santos will
22 | likely repeat that he was an employee of the defendant at one point, and may have agreed to establish
23 | another company for Jain in Brazil. However, Dos Santos never gave Jain the authority to use his
24 | name to establish accounts used by Jain to launder the proceeds of illegal activity. All of these
25 | individuals are highly relevant and material to the Government establishing its case against the
26 | defendant.
27 | //
28 | //

3.  Potential Injustice to Defendant Jain

Where a foreign country's deposition procedures do not afford a criminal defendant the protections guaranteed by the United States Constitution, there is a potential for injustice to the defendant. Nevertheless, the Federal Rules of Criminal Procedure expressly authorize parties to take foreign depositions and to use them at trial when, as here, doing so is necessary to achieve justice. Drogoul, 1 F.3d at 1551. Thus, courts have approved foreign depositions where the procedures employed substantially protected the defendant's constitutional rights. See e.g. United States v. Mueller, 72 F.3d 1152, 1157 (11th Cir. 1996) (no injustice where defendant, although not present, was represented by counsel, was able to listen to the deponent's testimony and consult with his counsel by telephone, and deponent spoke English); United States v. Walker, 1 F.3d 423, 428-29 (6th Cir. 1993) (no injustice where defendants, although not present, were represented by counsel who cross-examined deponents, and deponents took oaths administered by U.S. consular official); United States v. Gifford, 892 F.2d 263, 265 (3d Cir. 1989) (no injustice where defendant, although not present, was represented by counsel and was able to listen to proceedings as they occurred and consult with his counsel); Kelly, 892 F.2d at 262-63 (no injustice where defendant, although not present, was represented by counsel, able to listen to the proceedings, able to confer privately with counsel by private telephone, and deposition was videotaped); Sines, 761 F.2d at 1441 (no injustice where defendant waived his right to attend deposition but could consult with counsel during breaks by telephone).

Recognizing the preference for face-to-face confrontation under the Sixth Amendment, the Ninth Circuit has held that a defendant, even if in custody, has a conditional right to attend a foreign deposition. Christian v. Rhode, 41 F.3d 461, 467 (9th Cir. 1994). A defendant may waive the right. 41 F.3d at 466 n.6, citing Sines, 761 F.2d at 1441 and Barker v. Morris, 761 F.2d1396, 1400 (9th Cir. 1985); Johnpoll, 739 F.2d t 710. Likewise, where the foreign nation in which the deposition is to be held rejects the prosecution's good-faith request to permit the defendant to be present, the deposition may nevertheless be authorized and admitted in evidence at the defendant's trial. 41 F.3d at 466; Gifford, 892 F.2d at 264; Kelly, 892 F.2d at 262; Marteau, 162 F.R.D. at 371 ("physical presence [of the defendant] is not an absolute requirement of FRCrP 15").

1       If allowed by this Court to do so, the defendant, who is currently released on a bond of
2 $250,000, is free to attend the deposition with his counsel, allowing consultation with counsel
3 throughout. The Government will also request that the depositions of the proposed deponents be
4 videotaped. The Government will also attempt to ensure that the deposition procedures otherwise
5 comply with United States law (e.g., deponents will be administered oaths by a Uruguayan, Chinese
6 or Swiss judicial officer or U.S. consular official). Taking these steps – oath, cross-examination, and
7 preserving a record of the witnesses' demeanor – will satisfy the requirements of the Confrontation
8 Clause and adequately assure the reliability of the testimony given at the depositions. Rhode, 41
9 F.3d at 468; Sines, 761 F.2d at 1441-42.

10       Taking the depositions of the aforementioned individuals will neither violate defendant
11 Jain's constitutional rights nor result in injustice, while preserving the integrity and fairness of the
12 overall trial. Exceptional circumstances exist in this case and warrant allowing the Government to
13 take these depositions.

## IV

## **CONCLUSION**

16       For the reasons given above, the Court should grant the Government's motion to take
17 depositions of Claudio Ferreira Dos Santos, Alvaro Muscio, Juan Birnbaum, Marcelo Jorcin, Walter
18 Ponce De Leon, Federico Ponce De Leon, Ke Pei Ma, Christian Coquoz, Boillat Laurence and
19 Michel Charpiot .

1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
3  BRIAN J. STRETCH (CSBN 163973)
   Chief, Criminal Division
4  RICHARD C. CHENG (CSBN 135992)
   Assistant United States Attorney
5
6        150 Almaden Boulevard, 9th Floor
         San Jose, California 95113
7        Telephone: (408) 535-5032
         Fax: (408) 535-5066
8        e-mail: richard.cheng@usdoj.gov

9  Attorneys for Plaintiff

10                       UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA

12                              SAN JOSE DIVISION

13 UNITED STATES OF AMERICA,          )  Criminal Case No. CR-08 00197- RMW
                                      )
14              Plaintiff,            )  DATE:  June 30, 2008
                                      )  TIME:  9:00 a.m.
15         v.                         )
                                      )  DECLARATION OF RICHARD C. CHENG
16 SHAILESHKUMAR JAIN,                )  IN SUPPORT OF ORDER AUTHORIZING
                                      )  DEPOSITIONS PURSUANT TO
17         a/k/a SAM JAIN,            )  F. R. CRIM. P. 15 AND DECLARATIONS
                                      )  IN SUPPORT THEREOF
18              Defendant.            )
                                      )
19

20         I, RICHARD C. CHENG, declare as follows:

21         1.      I am an Assistant United States Attorney for the Northern District of California,

22 Computer Hacking and Intellectual Property Unit, San Jose, California. I am assigned to prosecute the

23 above-entitled case.

24         2.      On March 26, 2008, the Federal Grand Jury sitting in San Jose, California, indicted

25 the above-referenced defendant, SHAILESHKUMAR JAIN for multiple violations, including criminal

26 copyright infringement, trafficking in counterfeit goods, mail fraud and wire fraud. The Indictment

27 alleges that the defendant utilized numerous Internet websites to lure potential customers into

28 purchasing what the customers believed to be authentic computer software. Based upon the

1  investigation conducted jointly by agents of the Bureau of Immigration and Customs Enforcement and
2  the Internal Revenue Service, Criminal Investigative Division, we have learned that customers would
3  purchase the counterfeit software by sending their credit card or debit card information over the Internet
4  to the websites operated by the defendant..  Thereafter, the proceeds from the sale of counterfeit
5  software were moved to a number of accounts controlled by the defendant and ultimately to several
6  brokerage accounts established in the names of shell corporations with nominee owners.  Those shell
7  accounts were established with the assistance of employees of the Merrill Lynch offices in Uruguay,
8  in the name of The Rivonal Corporation, and listed Claudio Ferreira Dos Santos as the authorized
9  signer.

10         3. Based upon the investigation conducted by agents of the United States Department of
11  Homeland Security, Immigration and Customs Enforcement, and the Internal Revenue Service,
12  Criminal Investigative Division, the United States has identified a number of persons and businesses
13  that may have served as Jain's source of supply for the counterfeit Symantec software.  One such
14  individual, highlighted by Jain's own attorneys as being one of their client's source, is an individual
15  known as Mark Ma.  According to the information provided in part by the Chinese government, Ma's
16  true name is Ke Pei Ma.  Ma was born on January 19, 1958 and was previously assigned a United States
17  Alien Registration number.  Ma departed from the United States in October 2002 and is currently
18  located in a Chinese prison facility in Shanghai, China.

19         4. In early May 2008, Stewart Robinson, Principal Deputy Director of the Criminal Division
20  in Office of International Affairs, requested cooperation from Uruguayan authorities in the production
21  of documents relevant to the aforementioned corporations as well as assistance in arranging the
22  depositions of the five individuals mentioned above.  This request was made upon the grounds set forth
23  in Treaty on Mutual Legal Assistance in Criminal Matters between the United States and the Republic
24  of Uruguay, which was signed at Montevideo on May 6, 1991.

25         5. During and as part of the telephone conversations I have had with Mr. Robinson and
26  members of the Office of International Affairs, I have been informed that subpoenas issued by a United
27  States court have no legal force to compel a non-U.S. citizen residing in the Republic of Uruguay, the
28  People's Republic of China, or Switzerland to appear to give testimony in the United States.  Further,

1 | I have been informed by members of the Office of International Affairs, that there are no treaties in
2 | effect between the United States and Uruguay, the People's Republic of China or Switzerland, to
3 | compel the attendance of witnesses at a foreign trial.

5 | I declare under penalty of perjury that the foregoing is true and correct.
6 | Executed on this 27th day of June 2008.

8 |                                                           /s/
                                        RICHARD C. CHENG
9 |                                         Assistant U.S. Attorney