JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

RICHARD C. CHENG (CSBN 135992)
Assistant U. S. Attorney

150 Almaden Boulevard, 9th Floor
San Jose, California 95113
Telephone: (408) 535-5032
Fax: (408) 535-5066
e-mail: richard.cheng@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. CR-08-00197-RMW |
| Plaintiff | **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS FOR:** |
| v. | (1)  BILL OF PARTICULARS; and |
| | (2)  TO COMPEL DISCOVERY. |
| SHAILESHKUMAR JAIN, | **TOGETHER WITH A STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND UNITED STATES' MOTION FOR:** |
| a/k/a SAM JAIN, | |
| Defendant. | (1)  RECIPROCAL DISCOVERY |
| | DATE:  July 7, 2008 |
| | TIME:  9:00 a.m. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Joseph P. Russoniello, United States Attorney, and Richard C. Cheng, Assistant United States Attorney, and hereby files its Response and Opposition to Defendants' above-referenced motions.

//

//

**I.**

**STATEMENT OF FACTS**

### A.    The Indictment

The Indictment charges defendant Shaileshkumar Jain with one (1) count of criminal copyright infringement in violation of 18 U.S.C. § 2319(b)(1), twelve (12) counts of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a), nine (9) counts of wire fraud in violation of 18 U.S.C. § 1343, and nine (9) counts of mail fraud in violation of 18 U.S.C. § 1341.  The Indictment alleges that Jain violated the laws of the United States laws by selling counterfeit computer software over the Internet, causing the fraudulent movement of funds over wire communications, and distributing the counterfeit software through the mail.

### B.    The Sale of Counterfeit Symantec Products

In 2003, the Symantec Corporation of Cupertino, California, was contacted by eight individuals who had purchased what they were lead to believe were authentic Symantec Corporation computer software products.  Each customer had purchased the software over the Internet from various websites.  Each customer had been lured to the websites either through "spamming," which is the process of sending unsolicited emails to unsuspecting prospective customers, or "redirecting," which is the process of automatically directing potential Symantec Corporation customers to fraudulent websites.  Each customer paid for the counterfeit Symantec Corporation software by sending their credit or debit card information over the Internet to the websites.  In turn, each customer received a compact disc (CD) that bore the markings of the Symantec Corporation, thereby giving the CDs an appearance of legitimacy.  Each CD was mailed via the United States Postal Service or other private mail carrier, and listed the sender as "Software Purchase Department."  The return address provided was PO Box 820, Amelia, OH 45102-0820, U.S.A.  The Symantec Corporation analyzed each of the CDs submitted by the eight customers and determined that the CDs were in fact counterfeit.

In November 2003, the Symantec Corporation purchased software from one of the fraudulent websites.  The Symantec Corporation, which conducted this transaction under an assumed name, purchased computer software called Norton AntiVirus 2003, a software product protected by copyright by the Symantec Corporation.  The Symantec Corporation received an envelope via the U.S. Postal

1  Service listing the sender as "Software Purchase Department," and providing the same return address
2  as above.  The envelope contained a CD that, when analyzed by the Symantec Corporation, was also
3  determined to be counterfeit.

4          The listed return address was found to belong to a James Reno, of Bytehosting Internet Services,
5  LLC, located in Amelia, Ohio.  On July 29, 2004, Reno was deposed by Symantec Corporation's legal
6  counsel.  In his deposition, Reno stated that his company, Bytehosting Internet Services, LLC, hosted
7  a website for Promotion Management Consultants, Inc. (PMMCI), and that it conducted the shipping
8  and receiving of CDs for PMMCI.  Reno claimed that he did not know who owned PMMCI, but that an
9  individual named Sam Jain appeared to run its operations and was Reno's primary contact.  Reno
10 conducted shipping operations of the counterfeit Symantec software for Jain from 2001 until the end of
11 2003.

12         As a result of its investigation, Symantec Corporation determined that Jain had sold
13 approximately 26,800 counterfeited Symantec Corporation CDs to unsuspecting customers over the
14 Internet.  In April 2005, the Symantec Corporation won a default civil judgment against Jain and others
15 in the amount of $3.1 million USD.

16         **C.      Tracing Proceeds of the Sale of Counterfeit Software To Shell Accounts**

17         Tracing the proceeds derived by Jain from the sale of the counterfeit Symantec software, the
18 investigation has revealed a number of persons who are in possession of specific evidence that is directly
19 probative to the issues involved in the prosecution of Jain, including the defendant's knowledge and
20 criminal intent.  Specifically, these individuals who are citizens of, and reside in Uruguay, were enlisted
21 by Jain to establish a number of shell companies and financial accounts to receive in, and distribute out
22 the illegal proceeds from the sale of the counterfeit software.

23         The investigation has revealed that Jain has used the personal information of a Brazilian national
24 named Claudio Ferreira Dos Santos, to establish a personal holding company, a corporation, and
25 investment accounts in Uruguay and Switzerland to act as the repository of the monies paid for the
26 counterfeit software.  Dos Santos, a citizen and resident of Uruguay, claims to have no knowledge of
27 Financiera Volturno, Rivonal Corporation S.A., or any Merrill Lynch investment accounts in Uruguay
28 or Switzerland.  Dos Santos was reportedly an employee of Jain's in Brazil when the defendant asked

3

him to be the registered representative of Reydson Serviços Telecomunicações Ltda., a company in Brazil. According to Dos Santos, Jain made this request of him because foreigners, such as Jain, are purportedly barred from owning businesses in Brazil. Dos Santos stated that he was not made aware that he would also be the registered representative of the Uruguayan companies, Financiera Volturno or Rivonal Corporation S.A. Dos Santos was informed about a Merrill Lynch Uruguay account only upon being contacted by Merrill Lynch Uruguay in March 2006, and being told that his name was on the signature card for the account.

Jain and attorney Federico Ponce De Leon, who is a citizen and resident of Uruguay, first established the holding company in Uruguay, named Financiera Volturno. Using Financiera Volturno, Jain and his attorney then established the above-noted corporation, named the Rivonal Corporation S.A., which was ostensibly owned by Financiera Volturno. Dos Santos is listed as having power of attorney over Financiera Volturno and is listed as the sole member of the Rivonal Corporation's Board of Directors.

The father of attorney Federico Ponce De Leon, Walter Ponce De Leon, who is also a citizen and resident of Uruguay, was the listed president of Rivonal Corporation S.A. The Rivonal Corporation S.A. in turn, opened an investment account in Uruguay at Institución Financiera Externa Merrill Lynch(herein referred to as Merrill Lynch Uruguay) for the benefit of the defendant.

The investigation shows that this Merrill Lynch account was opened by a business associate of Jain's, named Alvaro Muscio, a citizen and resident of Uruguay, who was financial advisor for Merrill Lynch Uruguay. The investigation shows that Muscio, along with Merrill Lynch Financial Advisor Juan Birnbaum, and Merrill Lynch Client Associate Marcelo Jorcin, both of whom are citizens and residents of Uruguay, knowingly opened these shell accounts for Jain ,using Dos Santos' name, signature, and passport. Merrill Lynch Uruguay has since terminated Muscio's, Birnbaum's, and Jorcin's employment with the company.

## II.

## DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

Defendant Shaileshkumar Jain has moved for a bill of particulars. As discussed below, the defendant is not entitled to a bill of particulars in this case, much less an order requiring the Government

1   to respond to their lengthy list of questions.

2        The purpose of a bill of particulars is threefold:

3          (1)   to minimize the danger of surprise at trial;

4          (2)   to provide sufficient information on the nature of the charges so as to allow

5              preparation of a defense; and

6          (3)   to protect against double jeopardy.

7   United States v. Robertson, 15 F.3d 862, 873-74 (9th Cir. 1994), rev'd, in part, on other grounds, 115

8   S. Ct. 1732 (1995); United States v. Burt, 765 F.2d 1364, 1367 (9th Cir. 1985).

9        A district court's ruling on a motion for a bill of particulars will be upheld absent abuse of

10  discretion.  United States v. Giese, 597 F.2d 1170, 1180 (9th Cir.), cert. denied, 444 U.S. 979 (1979).

11  A bill of particulars cannot be used to circumvent Fed. R. Crim. P. 16 discovery and is not to be the

12  equivalent of a request for complete discovery of the Government's evidence.  Id. at 1181 (emphasis

13  added).  See also, United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978) (bill of particulars is not

14  a device by which a defendant may compel disclosure of the prosecution's evidence in advance of trial).

15       In determining whether a bill of particulars is warranted, the court should consider whether the

16  defense has been advised adequately of the charges.  This can be done in a variety of ways and is most

17  generally accomplished through the indictment itself.  Robertson, 15 F.3d at 874 (bill of particulars

18  appropriately denied where indictment contained names of alleged coconspirators, approximate dates

19  on which alleged illegal conduct occurred, and overt acts comprising the illegal activity).  Accord,

20  United States v. DeCesare, 765 F.2d 890, 897-98 (9th Cir.), amended on other grounds, 777 F.2d 543

21  (1985).

22       Federal Rule of Criminal Procedure 7(c) states that an indictment must contain "a plain, concise

23  and definite written statement of the essential facts constituting the offense charged."  A Bill of

24  Particulars pursuant to Rule 7(f) is not required where the indictment apprizes the defendant of the

25  specific charges against him, and thereby minimizes the danger of surprise at trial, allows him to prepare

26  for trial, and protects him against double-jeopardy.  Robertson, 15 F.3d at 873-74.

27       Under the authority of Rule 7(f) of the Federal Rules of Criminal Procedure, a bill of particulars

28  may be ordered by the court.  The Ninth Circuit has stated on many occasions that the purpose of the bill

5

1  of particulars is:

2      "[T]o inform the defendant of the nature of the charge against him with sufficient
       precision to enable him to prepare for trial, to avoid or minimize the danger of surprise
3      at the time of trial, and to enable him to plead his acquittal or conviction in bar of another
       prosecution for the same offense when the indictment itself is too vague, and indefinite
4      for such purposes."

5  United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir. 1991). See United States v. Fleming, 8 F.3d 1264,

6  1265-66 (8th Cir. 1993) (motion for bill of particulars denied when indictment sufficient to inform

7  defendant of charges and no surprise or prejudice); United States v. Colson, 662 F.2d 1389, 1391 (11th

8  Cir. 1981) (motion for bill of particulars requesting identity of unnamed co-conspirators, dates and

9  locations of conspiratorial acts, and other detailed information properly denied when defendant failed

10  to show prejudice and actual surprise at trial because bill of particulars not to be used merely as

11  discovery tool).

12      In this case, the indictment includes over three pages of introductory language which advises

13  the defendant of the scheme and artifice that the Government is prepared to prove at trial. All of the

14  counts following the introduction and the recitation of the alleged scheme and artifice, also track the

15  language of the statute. The substantive counts provide dates of the alleged trafficking of counterfeit

16  goods as well as a brief description of the alleged counterfeit good itself. Thus, the essential facts

17  constituting the offense charged are contained on the face of the indictment. United States v. Schmidt,

18  947 F.2d 362, 369 (9th Cir. 1991). Additionally, the indictment itself contains a comprehensive

19  description of the Government's case, outlining the organizational and operational structure of the

20  alleged illicit trafficking in counterfeit goods. Moreover, beyond the indictment, and the aforementioned

21  factual summaries, substantial information already has been provided in discovery, including

22  approximately 21,295 pages of discovery. Also, the various unredacted communications between the

23  defendant and his primary shipper in Ohio describe the nature and extent of the investigation, which will

24  undoubtedly apprise the defendant regarding his particular role in the alleged trafficking of counterfeit

25  goods.

26      The Government will continue to provide additional discovery on an ongoing basis. This

27  discovery will include any further shipment records, internal documents and communications, reports --

28  not even discoverable under Rule 16 -- concerning the activities of the defendants taken in furtherance

6

1    of the charged trafficking. The Government has stated to the defendants that it will provide all such

2    statements, except as necessary to ensure witness safety and privacy. Such discovery obviates the need

3    for a bill of particulars. <u>See</u> <u>United States v. Mitchell</u>, 744 F.2d 701, 705 (9th Cir. 1985) (purpose of

4    bill of particulars served if indictment and discovery provide sufficient details of charges); <u>Giese</u>, 597

5    F.2d at 1180 ("Full discovery also obviates the need for a bill of particulars."). Here, the Government

6    has already provided a substantial amount of discovery and will provide all Rule 16 discovery. In such

7    a case, the defendants have little chance of being unfairly surprised at trial.

8        Considering these circumstances, the three purposes of the bill of particulars are fulfilled. First,

9    the documents that the Government has already provided has significantly reduced the possibility of

10   surprise at trial. In their motion for bill of particulars and to compel discovery, the defendant neglects

11   to mention specifically which portions of the listed documents were redacted, as no documents were

12   completely redacted. The Government's focus was to redact any personal information – addresses,

13   phone numbers, email addresses, account numbers – that could potentially compromise the privacy of

14   uninvolved third parties. On the Airborne Express shipping records, the names of the recipients were

15   not redacted while clearly indicating the scope of the Government's investigation, as well as providing

16   the factual basis for the Government's claim of the enormity of the defendant's organizational and

17   operational structure. Also, on the Symantec product returns, the Government did not redact the names

18   of the individuals who returned their products, but only any of the personal information that could

19   compromise their privacy, most notably their credit card numbers and expiration dates in these particular

20   documents. Finally, on the bank records, the actual transfers of sums made from the alleged victims'

21   accounts to the defendant's have not been redacted. Only the personal bank numbers and account

22   numbers of the alleged victims have been so redacted. In totality, once both parties prepare their final

23   witness lists, the possibility of surprise at trial will be tremendously low for both parties.

24       The second purpose of a list of particulars is to provide sufficient information on the nature of

25   the charges so as to allow preparation of a defense. The information which the defendant requests in its

26   proposed transfer of documents in the bill of particulars are much more questions of discovery. A bill

27   of particulars cannot be used by the defendant in this case to obtain documents. As such, the very

28   detailed indictment and the discovery already provide the defendant sufficient information on the nature

1    of the charges so as to allow preparation for a defense.  In fact, the Government has been made aware

2    that counsel and/or investigators for the defendant has already met with many of the individuals to whom

3    the Government alleges the defendant trafficked counterfeit goods.  Many of these transactions are

4    specifically set forth in the indictment.  Given these facts, the defendants plainly are on notice of the

5    specific nature and extent of the charges against them.  Nothing more is required.  Considered as a

6    whole, the indictment here adequately apprises defendants of the charges against them.

7           Moreover, even assuming that the requests made by the defendant are not a discovery motion but

8    rather a motion on a bill of particulars, many of the items that the defendant wishes the Government to

9    present have already been given to the defendant through discovery.  For example, the defendant asks

10   that the Government should identify that the discs were counterfeit.  However, the Government did

11   present to the defendant a copy of a declaration made by Robert Freedman, the Chief Technology Officer

12   of the optical media manufacturing division at Crest National.  In Symantec's civil suit against the

13   defendant, Freedman provided a declaration where he states that he personally tested software Jain

14   produced that Symantec had purchased in a control buy.  These documents can be clearly found in Bates

15   001381-001421, where there are also numerous detailed pictures of the software that Freedman

16   examined.  Combined with collaborating evidence that the software matched those produced by Jain,

17   all of the presented evidence fulfills the obligatory purposes of the bill of particulars: to reduce the risk

18   of surprise at trial, to adequately provide sufficient information on the nature of the charges so as to

19   allow preparation of a defense, and to avoid double jeopardy.

20          Essentially, the defendant is asking the Government to lay out its entire case, which is really

21   discovery under the thin veil of a motion for bill of particulars.  However, the Government has fulfilled

22   its responsibility by presenting a clear and comprehensive indictment that does not at all infringe upon

23   the protections afford to the defendant.  The defendants clearly are <u>not</u> entitled to a response seeking

24   essentially a complete listing of all the evidence, witnesses, acts, and statements which the Government

25   contends establishes the case.  As the Ninth Circuit has noted, such a request "misconstrues the purpose

26   of a bill of particulars."  <u>United States v. Ryland</u>, 806 F.2d 941, 942 (9th Cir. 1986).  "A defendant is

27   not entitled to know all the <u>evidence</u> the government intends to produce but only the <u>theory</u> of the

28   government's case."  <u>Id</u>. (citations omitted) (emphasis in original).

1    Defendant's request for the "when, where, and how" of every act of the trafficking in counterfeit

2    goods is equivalent to a request for complete discovery of the government's evidence, which is not a

3    purpose of the bill of particulars.  See Armocida, 515 F.2d at 54.  "A defendant is not entitled to know

4    all the evidence the government intends to produce, but only the theory of the government's case."

5    Giese, 597 F.2d at 1180-81.  Moreover, defendant fails to "demonstrate surprise, prejudice, or an

6    increased risk of double jeopardy stemming from the alleged shortcomings of the indictment."  United

7    States v. Burt, 765 F.2d 1364, 1367 (9th Cir. 1985).  The motion presented by the defendant illustrates

8    no concrete evidence of prejudice or significant disadvantage that the defendant suffers from not

9    knowing the personal email addresses and bank account numbers of these third parties.  From the

10   indictment and the government evidence which defendant received, defendant knows the nature of the

11   charges against him and can prepare for trial.  Nothing more is required.

12   Accordingly, because the indictment and discovery adequately advise the defense of the charges

13   and the theory of this case, and the Government intends to provide all discovery, including Jencks

14   materials, prior to trial and because the defendants have failed to set forth facts establishing how they

15   will be prejudiced or surprised by a denial of their motion, defendants' motion for a bill of particulars

16   should be denied.

17                                                      **III.**

18                   **DEFENDANT'S MOTION TO COMPEL DISCOVERY SHOULD BE DENIED**

19   _____As of the date of this Response and Opposition, the United States has produced 21,295 pages of

20   discovery.  Additional discovery will undoubtedly be produced as it becomes available.  The discovery

21   produced is, in many cases, in excess of what is required by Rule 16 of the Federal Rules of Criminal

22   Procedure and the Jencks Act (now covered by Rule 26.2 of the Federal Rules of Criminal Procedure).

23   As to the physical evidence, the United States will make it available for viewing by defense counsel at

24   a mutually convenient time and place.  However, the Government will not identify which particular

25   documents will be used to demonstrate culpability, as that obviously would be beyond its obligations

26   of discovery production to the defendant.

27   As to exculpatory information, the United States is well aware of its obligations under Brady v.

28   Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply.  The

United States will also produce any evidence of bias/motive, impeachment or criminal investigation of any of its witnesses which it becomes aware of. An inquiry pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) will also be conducted. However, the defendant has again failed to provide any sufficient demonstration of how the addresses of individuals who were not even included in the indictment could possibly lead to potential exculpatory information.

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced.

The United States will provide information within its possession or control pertaining to the prior criminal history of the Defendant. The United States will provide prompt notice of its intent to offer any evidence it plans to introduce at trial under Fed R. Crim. Proc. 404(b). Additional discovery of any prior incident will be provided in discovery.

The United States will produce any reports of experts that it intends to use in its case-in-chief at trial or are material to the preparation of the defense. For example, the declaration by Freedman is extremely persuasive in providing a factual and scientific basis for his conclusion that the software Symantec purchased in a controlled buy was counterfeit. As such, and as per its procedural responsibilities and obligations, the Government has produced these documents as part of discovery. In view of the above-stated position of the United States concerning discovery, it is respectfully requested that no orders compelling specific discovery by the United States be made at this time.

**IV.**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A.    RULE 16(b)**

Defendant has invoked Federal Rule of Criminal Procedure 16(a) in his motion for discovery. Further, the Government will voluntarily comply with the requirements of Federal Rule of Criminal Procedure 16(a). Therefore, Rule 16(b) should presently be determined to be operable as to the defendant.

The Government, pursuant to Rule 16(b), hereby requests Defendant to permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and

which he intends to introduce as evidence in his case-in-chief at trial.  The Government further requests

that it be permitted to inspect and copy or photograph any results or reports of physical or mental

examinations and of scientific tests or experiments made in connection with this case, which are in the

possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or

which were prepared by a witness whom the defendant intends to call as a witness.  The Government

also requests that the court make such orders as it deems necessary under Rule 16(d)(l) and (2) to insure

that the Government receives the discovery to which it is entitled.

**B.**     **RULE 26.2**

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all

witnesses, except the defendants.  The rule thus provides for the reciprocal production of Jencks

statements.

The time frame established by the rule requires the statement to be provided after the witness has

testified, as in the Jencks Act.  Therefore, the Government hereby requests that the defendant be ordered

to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.

This order should include any form these statements are memorialized in, including but not limited to,

tape recordings, handwritten or typed notes and/or reports.

**V.**

**CONCLUSION**

For the reasons stated above, the Government asks that the Court DENY Defendant's

motions, except where unopposed, and GRANT the Government's motion for reciprocal discovery.

DATED: June 27, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____
         /s/
RICHARD C. CHENG
Assistant U.S. Attorney