JAY R. WEILL (State Bar No. 75434)
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Eighth Floor
San Francisco, California 94111-3629
Telephone:    (415) 392-1960
Facsimile:    (415) 392-0827

Attorneys for Defendant SHAILESHKUMAR JAIN a/k/a SAM JAIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SHAILESHKUMAR JAIN, a/k/a SAM JAIN,<br><br>    Defendant. | CASE NO. CR-08-00197 JMW<br><br>OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER AUTHORIZING DEPOSITIONS PURSUANT TO FED.R CRIM. P.15<br><br>Date: July 21, 2008<br>Time: 9:00 am |

## INTRODUCTION

The Government requests that it be allowed to take discovery depositions of six citizens in Uruguay; two Swiss prosecutors and one Swiss law enforcement officer; and one individual who is incarcerated in a Chinese prison facility in Shanghai, China. We oppose this request for discovery for the following reasons:

## INDICTMENT

The Defendant Jain was indicted on March 26, 2008 with 31 counts relating to the allegation that Jain distributed counterfeit Symantec computer security software. Jain is alleged to have advertised for sale genuine Symantec software but knowingly sold and distributed counterfeit software. Count One of the Indictment charges that Jain reproduced and distributed at least 10 unauthorized copies of Symantec software. In Counts Two through Thirteen, Jain is charged with

knowingly transporting, transferring, and disposing for value 12 packages of counterfeit Symantec software. These Counts list only the dates the packages were transported but not the name and addresses. In Counts Fourteen through Thirty-One, Jain is charged with wire and mail fraud by delivering 9 items of counterfeit software. These Counts list the addresses but not the names of the recipients.

The Government makes reference in its motion at pages 3-4 to an investigation by Symantec and the filing of a civil action against Jain and others for copyright infringement. Jain did not appear in the action and a default judgment was entered against Jain in favor of Symantec. The Government claims Symantec determined in the civil action that Jain had sold approximately 26,800 counterfeit discs of Symantec software. The Government is mistaken because Symantec's purported expert in the civil case examined and opined that only 16 discs were likely counterfeit.

## SYMANTEC CORPORATION'S CIVIL ACTION

Because the Government relies principally on the civil case for the facts underlying the Indictment, it is important for the Court to understand the background of the Symantec civil action and how it relates to Jain's request for a bill of particulars and discovery. On January 18, 2008 defense counsel met with AUSA Richard Cheng and proffered to him, among other documents, all the pertinent pleadings relating to that civil case. We also provided the AUSA with press releases from the Department of Justice and Symantec in July 2007 which announced that a Mark Ma had been arrested in China and according to Symantec and the Government was the major producer of counterfeit Symantec software in the world. We proffered that an entity affiliated with Jain, may have purchased 42 pounds or 952 discs from a company the Government now claim was associated with Mark Ma, out of the total of 40,620 discs purchased from 9 other vendors. Symantec first made this disclosure public on November 6, 2006 when it sued Mark Ma and others for copyright infringement. Symantec had not issued any public notice in 2003 that would put anyone on notice, such as Jain, that Ma Mark or companies associated with him were selling counterfeit Symantec software.

Symantec Corporation filed a civil complaint against James Reno and Jain and others on April 29, 2004 in Federal District Court in Los Angeles, California. James Reno is a resident of

Cincinnati, Ohio and was associated with a company called Bytehosting Internet Services, LLC. He distributed software products in the United States for entities affiliated with Jain. The Symantec civil complaint alleged trademark and copyright infringement by the civil defendants of Symantec's software products. The Jain was not personally served with process and did not appear in that case other than to oppose the default entered against him and to deny that he knowingly sold or marketed any counterfeit Symantec software.

Only 16 discs were tested by Symantec in the civil action out of the 40,620[1] units purchased by entities affiliated with jain for delivery to James Reno, which had a total retail value of only $639.20 (16 x $39.95-retail sales price). James Reno's deposition was taken on July 24, 2004 by Symantec in the civil case and he produced for Symantec the shipping invoices for all the Symantec software he received for distribution. Defense counsel provided a copy of the deposition to AUSA Cheng and accompanying exhibits at the meeting on January 18. The records disclosed that entities affiliated with Jain purchased a total of 1732 pounds of Symantec software discs from 10 different vendors which were shipped to James Reno in Ohio for distribution.

James Reno settled the civil case on December 10, 2004 by paying Symantec $15,000 and agreeing to the entry of an injunction barring him from selling Symantec products or doing business with the defendants. A default was entered against Jain on December 9, 2004. The district court denied jain's motion for relief from default on March 28, 2005. Jain had filed a declaration under oath denying that he knowingly sold or marketed any counterfeit Symantec software.

Civil liability for copyright infringement is a strict liability tort. A defendant in a civil copyright infringement case can be held civilly liable even if the infringement was done in good faith without deprive intent. Armco Steel Corp. v. International Armanment, 249 F.Supp. 954, 958 ( D. D.C. 1966). The orders and judgments in a civil case are inadmissible in a subsequent criminal proceeding. Fed. R. Evid. 801(a)

---

[1] This is the number used by Symantec in the civil case.

1  Symantec's evidence used to obtain the default judgment against Jain was through the
2  declaration of a Robert Freedman, who had been hired by Symantec to examine only 16 discs and
3  opined that there was a high likelihood/high probability that the 16 discs were counterfeit. He did
4  not testify nor was he examined by deposition in the civil case.

5  Symantec had hired a CPA in the civil case, William Mowery, who was asked to assume
6  that all 40,620 discs allegedly purchased by entities affiliated with Jain from 10 different vendors
7  were counterfeit for his sales and damage calculations which he computed in the following
8  manner:

9      1,791 pounds of CDs X 22.68 CDs per pound
10     1,791 x 22.68 x $39.95 = $1,622,764 in retail sales

11 The district court in the civil action ruled in entering a default judgment against Jain that
12 he was involved in the sale of at least 26,835 counterfeit copies of Symantec software. There was
13 no factual basis in the record for that finding. Accordingly there is no information or logic to how
14 the district court went from the 16 discs examined by Robert Freedman, to the 40,620 discs
15 delivered to James Reno for distribution, and finally to the figure of 26,835 used in the default
16 judgment. More importantly, the Government has refused to disclose the total number of
17 purported counterfeit discs it claims Jain willfully caused to be distributed; hence Jain is supposed
18 to guess whether it is the 16 examined by Freedman or the total of alleged 40,620 distributed by
19 James Reno or some lesser number. The Government is required to make that disclosure now
20 before trial not during the trial. Jain has filed a motion for bill of particulars and for discovery
21 which is scheduled to be heard by Magistrate Judge Lloyd in July 17, 2008.

22 **THE GOVERNMENT'S MOTION FOR RULE 15 DEPOSITIONS SHOULD BE DENIED**

23 A District Court may authorize a foreign deposition to be taken in a criminal case, under
24 Fed. R. Crim.P. 15 when "exceptional circumstances" exist and the deposition would "serve the
25 interest of justice." United State v. Zuno-Acre, 44 F.3d 1420, 1424 (9th Cir. 1995). The moving
26 party has the burden of proof to establish exceptional circumstances justifying the taking of a
27 deposition. They are disfavored in criminal cases and cannot be used for discovery. See United
28 States v. Drogoul, 1 F.3d 1546, 1551-52 (11th Cir. 1993); United States v. Adcock, 558 F2d 397,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  406 (8th Cir.) cert. denied, 434 U.S. 921 (1977).

2  "Exceptional circumstances" exist if (1) the witness is "unavailable" and (2) the witness' testimony is material to the case. See, e.g., United States v. Johnpoll, 739 F.2d 702, 709 (2d Cir.), cert denied, 469 U.S. 1075 (1984). "The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case.." Drogoul, supra at 1552. This showing can be made in several different ways, including providing the court proffered testimony or affidavits.

8  A showing that the testimony is material requires the movant make known to the court and opposing counsel the thrust of the evidence by affidavit, proffered testimony or calling a witness to the stand. The proffer must alert the court to the substance of the evidence that is at peril of being excluded. United States v. Sheffield, 992 F.2d 1164,1169 (11th Cir. 1993).

12 The Government has made no such showing here other than to claim that the witnesses "are in possession of information and are able to provide testimony that bears directly on the knowledge and intent of the defendant" or the witnesses " should be able to testify" or the witnesses "will likely repeat ." (Government Memorandum 6 and 10). This is an insufficient showing. The Government is required to demonstrate with specificity what the testimony of each witness will be and how it is material to the charges in the Indictment, not merely that the witnesses may have relevant testimony. The Government clearly seeks to take discovery dispositions, which is improper under Rule 15.

20 The Government is required to disclose what the testimony of these witnesses will be as it relates to the issue of whether Jain knowingly distributed counterfeit Symantec software in 2003. In requesting 8 foreign depositions under Rule 15, the Government seeks an *extraordinary* remedy that is entirely unrelated to the discovery procedures governed by Rule 16. Indeed, "[t]he purpose of Rule 15(a) is to preserve testimony for trial, not to 'provide a method of pretrial discovery.'" United States v. Kelley, 36 F. 3d 1118, 1124 (D.C. Cir. 1994); see also United States v. Perez, 870 F. 2d 1222, 1226 n. 1 (7th Cir. 1989); United States v. Hajbeh, 284 F. Supp. 2d 380, 382 n. 10 (E.D. Va. 2003). Drogoul, 1 F.3d 1546, 1551 (11th Cir. 1993); U.S. v. Rich, 580 F.2d 929, 933-34 (9th Cir.1978).

1  As we have described in detail above, the Indictment relates to the charge that in 2003 Jain
2  distributed Symantec computer security software that he knew to be counterfeit. The discovery
3  that the Government seeks to take by Rule 15 depositions of people all over the world from
4  China to Uruguay to Switzerland apparently relates to allegedly what entities affiliated with Jain
5  allegedly did years later with the sale proceeds from the software sales, which is either $639.20 if
6  the Government claims that only the 16 discs examined by Freedman in the civil case were
7  counterfeit or $1,622,769 if the Government claims that all Symantec software discs distributed by
8  entities affiliated with Jain were counterfeit. The Government refuses to disclose the number of
9  Symantec software discs it claims that Jain distributed which he knew to be counterfeit. Hence,
10 we filed a motion for bill of particulars. As for the Chinese prisoner Mark Ma, we acknowledge
11 that an entity affiliated with Jain may have purchased 952 discs from a company controlled by Ma,
12 like thousands of other customers of Ma. However, there is no proffer by the Government of what
13 Ma would say if he were deposed.

14 The Government's motion for Rule 15 discovery depositions should be denied whether the
15 Government seeks discovery to trace $639.20 or $1,622,769. The Government has failed to
16 explain by affidavit or declaration what exactly these witnesses will testify to in a Rule 15
17 deposition. The best the Government can do is to allege that the witnesses "should be able to
18 testify to" or they will "likely repeat". It appears that the Government has not spoken to any of
19 these witnesses prior to filing this motion. Otherwise, the Government would have proffered their
20 proposed testimony.

21 There is no explanation under what international legal authority, such as a mutual legal
22 assistance treaty, for example the Chinese Government would allow one of their prisoners ( Mark
23 Ma ) to be deposed and why he would be willing to be questioned when he is under indictment
24 here in the United States for criminal copyright infringement. The Government offers no
25 explanation of why the Swiss Government would allow two of their Federal prosecutors, Christian
26 Coquoz and Boillat Laurence, and one of their law enforcement officers, Michael Charpoit, to be
27 deposed, rather than travel to San Jose to testify at the trial. The Government offers no
28 explanation of how the testimony of six people in Uruguay are material to whether in 2003 Jain

1  knew that any of Symantec software purchased by entities he was affiliated with and then
2  distributed by James Reno was counterfeit. The motion is simply a tactic to toll the Speedy Trial
3  Act clock to allow the Government more time to further investigate the case.
4      For the above reasons, the Government's motion to take Rule 15 depositions of any of the
5  witnesses should be denied because they are discovery depositions prohibited by Rule 15.

7  DATED: July 14, 2008        Respectfully submitted,
8                              SIDEMAN & BANCROFT LLP

10                             By: /s/ Jay R. Weill
11                                   Jay R. Weill
                                  Attorneys for Defendant SHAILESHKUMAR JAIN
                                  a/k/a SAM JAIN

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

10237\640890v1            6            Case No. CR-08-00197 JMW
OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER AUTHORIZING DEPOSITIONS PURSUANT TO §F.R. CRIM. P.15